UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| STEVEN MARSHALL, individually and on behalf of the Judicial Branch of Illinois Government and THE CIRCUIT COURT OF COOK COUNTY, | ) ) ) ) | 10 C 6843 |
| Plaintiffs, | ) ) | Judge Feinerman |
| vs. | ) ) | |
| THE COUNTY OF COOK, | ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Steven Marshall brought this suit against Defendant Cook County in the Circuit Court of Cook County, Illinois, alleging that the way the County accounts for, maintains, and spends court filing fees is unlawful in numerous respects. The County removed the suit to federal court after Marshall filed a second amended complaint (Doc. 1-17 at 23-40) purporting to state a claim under the Due Process Clause of the United States Constitution. The County has moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss the second amended complaint in its entirety for failure to state a claim, and Marshall moved under Rule 15(a) to file a third amended complaint adding a claim under the federal Equal Protection Clause. Docs. 18, 20. Marshall's motion to amend is denied on futility grounds because his proposed equal protection claim is meritless. The County's motion to dismiss is granted as to Marshall's federal due process claim, which is dismissed with prejudice. Having disposed of the federal claims, the court remands the remainder of the case—which consists solely of state law claims—to the

Circuit Court of Cook County. Given the remand, the County's motion to dismiss is denied as moot insofar as it is directed to the state law claims.

**Background**

According to the complaint, 55 ILCS 5/3-6023 "obligates Cook County to provide the primary funding for courthouse and courtroom security for the protection of Judges and litigants." Doc. 1 at 20. That statute reads as follows:

> Attendance at courts. Each sheriff shall, in person or by deputy, county corrections officer, or court security officer, attend upon all courts held in his or her county when in session, and obey the lawful orders and directions of the court, and shall maintain the security of the courthouse. Court services customarily performed by sheriffs shall be provided by the sheriff or his or her deputies, county corrections officers, or court security officers, rather than by employees of the court, unless there are no deputies, county corrections officers, or court security officers available to perform such services. *The expenses of the sheriff in carrying out his or her duties under this Section*, including the compensation of deputies, county corrections officers, or court security officers assigned to such services, *shall be paid to the county from fees collected pursuant to court order for services of the sheriff and from any court services fees collected by the county pursuant to Section 5-1103, as now or hereafter amended*.

55 ILCS 5/3-6023 (emphasis added). The last sentence of Section 3-6023 references "Section 5-1103," which reads in pertinent part as follows:

> Court services fee. A county board may enact by ordinance or resolution a court services fee dedicated to defraying court security expenses incurred by the sheriff in providing court services or for any other court services deemed necessary by the sheriff to provide for court security, including without limitation court services provided pursuant to Section 3-6023, as now or hereafter amended. … In setting such fee, the county board may impose, with the concurrence of the Chief Judge of the judicial circuit in which the county is located by administrative order entered by the Chief Judge, differential rates for the various types or categories of criminal and civil cases, but the maximum rate shall not exceed $25. *All proceeds from this fee must be used to defray court security expenses incurred by the sheriff in providing court services*. No fee shall be imposed or collected, however, in traffic, conservation, and ordinance cases in which fines are paid without a court appearance. *The fees shall be collected in the manner*

> *in which all other court fees or costs are collected and shall be deposited into the county general fund for payment solely of costs incurred by the sheriff in providing court security or for any other court services deemed necessary by the sheriff to provide for court security.*

55 ILCS 5/5-1103 (emphasis added). The complaint alleges that fees collected under Section 5-1103 may be used only to defray court security expenses incurred by the county sheriff, and that the County unlawfully has used those fees for other purposes. Doc. 1 at 20. The complaint further alleges that the County "has refused to provide the funding necessary for the Sheriff of Cook County to provide for courthouse and courtroom security." *Ibid*.

Marshall also takes issue with the County's handling of other court fees. The particulars are unimportant; the only pertinent detail is that the County, according to Marshall, has violated state law by not keeping certain monies in segregated funds, by not auditing those monies, and by using those monies for prohibited purposes. *Id*. at 22-24. The complaint further alleges that the County has violated state law by deducting nine percent from various court funds for the "Cook County Administration" fund, also known as Fund 883. *Id*. at 24-25. With respect to all of the improperly handled monies, Marshall seeks "reimbursement … either to the individuals that paid the fees or a return of these funds to the control of the Judicial Branch." *Id*. at 25.

The second amended complaint, which is the pleading that prompted the County's removal of this suit to federal court, is brought on behalf of Marshall individually and also on behalf of the Judicial Branch of Illinois Government and the Circuit Court of Cook County. Doc. 1-17 at 23-20. After removal, Marshall voluntarily dismissed with prejudice any claims brought on behalf of the Judicial Branch and the Circuit Court, and thus now proceeds only as an individual. Doc. 66. The second amended complaint includes one count alleging that the County violated the federal Due Process Clause and several counts alleging various violations of

state law. As noted above, the County has moved to dismiss the second amended complaint for failure to state a claim, and Marshall has moved for leave to file a third amended complaint to add a federal equal protection claim.

**Discussion**

Marshall's federal due process claim is easily disposed of. Settled precedent holds that "the violation of state law is not itself the violation of the Constitution," *Archie v. City of Racine*, 847 F.2d 1211, 1217 (7th Cir. 1988) (en banc), and that the "[f]ailure to implement state law violates that state law, not the Constitution," *River Park, Inc. v. City of Highland Park*, 23 F.3d 164, 166-67 (7th Cir. 1994). As the County correctly notes, the sum and substance of Marshall's due process claim is that the County's alleged violations of state law constitute a due process violation. The claim accordingly fails as a matter of law. The court in *Perkins v. Cnty. of Cook*, 2010 WL 1334925 (N.D. Ill. Mar. 30, 2010), rejected a materially identical due process claim—one brought, it bears mention, by a plaintiff represented by the lawyer representing Marshall in this case. *Id*. at *2-3. *Perkins* says all there needs to be said about the due process claim. *See also Tenny v. Blagojevich*, 659 F.3d 578, 583 (7th Cir. 2011) ("Federal courts do not sit to compel a state's compliance with its own law."); *Devereaux v. Moore*, 2011 WL 2790175, at *5 (N.D. Ill. July 15, 2011) ("[a] refusal by government authorities to properly follow procedures set forth by state statute, for the handling and expenditure of fees earmarked for a specific purpose, is properly characterized as a potential violation of state law, not an infringement of constitutional rights") (brackets in original, internal quotation marks omitted); *Beary Landscaping, Inc. v. Ludwig*, 479 F. Supp. 2d 857, 868-69 (N.D. Ill. 2007) (dismissing due process claim against a state agency, reasoning that the claim was "fundamentally predicated on the mistaken notion that alleged errors and violations by [the agency] concerning the

interpretation and application of the Illinois Prevailing Wage Act constitute a Due Process violation").

In an effort to save his due process claim from dismissal, Marshall cites *Woodard v. Andrus*, 419 F.3d 348 (5th Cir. 2005), which upheld a due process claim brought against a court clerk alleged to have misallocated certain court fees. *Id*. at 353-54. But the *Woodard* plaintiff's due process claim was premised on the allegation that the clerk charged fees that were "in excess of[] or not authorized by state statute"—which, according to the Fifth Circuit, meant that litigants forced to pay the unlawful fees had been deprived of property without due process of law. *Ibid*. Here, by contrast, Marshall does not allege that the court fees he has paid either exceed the amounts allowed by Illinois statute; to the contrary, in discussing his proposed equal protection claim, he affirmatively admits that the fees paid by litigants in the Circuit Court of Cook County are authorized by statute:

> The Clerk of Courts Act in the State of Illinois, 55 ILCS 5/1 et seq. provides for a series of fees that may be imposed on litigants as a supplement to the obligation of the local counties to support the court system. That statute demonstrates that Cook County, based on a distinction purportedly because of population, *is permitted* to charge fees substantially in excess of those charged of the same filings throughout the rest of Illinois.

Doc. 18 at 9 (emphasis added). Because Marshall alleges only that the court fees, once collected, have been *allocated* in a manner contrary to state law, *Woodard* offers him no solace. *See In re Mann*, 311 F.3d 788, 791 (7th Cir. 2002) ("So far as the federal Constitution is concerned, it makes no difference whether [court] fees go into the state (or county) treasury, which then underwrites the judicial system, or instead are deposited into a separate fund under the control of the courts.").

Marshall's proposed equal protection claim also fails as a matter of law. The gist of the claim is that the fees Marshall paid to litigate in Cook County are greater than the fees other litigants pay to litigate in other Illinois counties. Doc. 18-1 at 9-10; *see also* Doc. 18 at 10 ("Plaintiff[] and others similarly situated paid two to three times the amount in fees for the same services rendered litigants in the remaining 101 counties throughout Illinois"). That does not state a viable constitutional claim. The Equal Protection Clause protects Marshall from being treated differently than others are treated. *See LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 941 (7th Cir. 2010) ("Traditionally, the Equal Protection Clause is understood as protecting members of vulnerable groups from unequal treatment attributable to the state. But it also proscribes state action that irrationally singles out and targets an individual for discriminatory treatment as a so-called 'class-of-one.'") (citation omitted). But Marshall is charged the same fees as everybody else who litigates in the Circuit Court of Cook County—that is, the relevant governmental body treats him the same as it treats everybody else. As *Perkins* explained in dismissing a comparable equal protection claim:

> Plaintiff has not alleged that he is part of any group that has been discriminated against, or that the government has treated him, as an individual, differently from anyone else. To the contrary, he alleges that he, "as every other litigant, was charged and paid certain fees." … Nor has Plaintiff alleged the infringement of a fundamental right. *See Lumbert v. Ill. Dept. of Corr.*, 827 F.2d 257, 259 (7th Cir. 1987) (holding that filing fees for litigation do not violate the Constitution). Without such allegations, Plaintiff cannot establish an equal protection claim.

2010 WL 1334925, at *4; *see also Woodard*, 419 F.3d at 354 (affirming dismissal of equal protection claim against the court clerk where the clerk charged all litigants the same fees). Because Marshall has not articulated a viable equal protection claim, his motion for leave to file a third amended complaint is denied. *See Gen. Elec. Capital Corp. v. Lease Resolution Corp.*,

128 F.3d 1074, 1085 (7th Cir. 1997) ("Even though Rule 15(a) provides that 'leave shall be freely given when justice so requires,' a district court may deny leave to amend for … futility. The opportunity to amend a complaint is futile if the complaint, as amended, would fail to state a claim upon which relief could be granted.") (citation and some internal quotation marks omitted).

Having disposed of Marshall's actual and proposed federal claims, the court must decide whether to retain or relinquish jurisdiction over the state law claims. Section 1367(c) of Title 28 provides that a district court "may decline to exercise supplemental jurisdiction over a claim" if "the claim raises a novel or complex issue of State law" or if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(1), (3). "As a general matter, when all federal claims have been dismissed prior to trial, the federal court should relinquish jurisdiction over the remaining pendant state claims." *Williams v. Rodriguez*, 509 F.3d 392, 404 (7th Cir. 2007). This rule has three exceptions: "when the [refiling] of the state claims is barred by the statute of limitations; where substantial judicial resources have already been expended on the state claims; and when it is clearly apparent how the state claim is to be decided." *Ibid*. None of those exceptions apply here. Moreover, the state law claims—which ask whether Illinois law prohibits the way an Illinois subdivision handles court fees paid by litigants in the Illinois courts—strike at the heart of the State's internal governance; if at all possible, those claims should not be resolved by a federal court. *See Key Outdoor Inc. v. City of Galesburg, Ill.*, 327 F.3d 549, 550 (7th Cir. 2003) ("The presence of a novel or complex issue of State law, in a suit where all federal claims have been finally resolved, implies the wisdom of sending those state-law theories back to state court.") (citations and internal quotation marks omitted); *Archie*, 847 F.2d at 1217 ("A state ought to follow its law, but to treat a violation of

state law as a violation of the Constitution is to make the federal government the enforcer of state law. State rather than federal courts are the appropriate institutions to enforce state rules."). It follows under 28 U.S.C. § 1367(c)(1) and (3) that the appropriate course is to remand the state law claims back to state court.

To summarize: Marshall's motion for leave to file a third amended complaint (Doc. 18) is denied. The County's motion to dismiss (Doc. 20) is granted in part as to the federal due process claim, which is dismissed with prejudice, and denied as moot in part as to the state law claims, which are remanded to the Circuit Court of Cook County. Given this disposition, Marshall's motion to remand (Doc. 59) is denied as to the federal claims and denied as moot as to the state law claims.

November 29, 2011            _____
                                              United States District Judge